IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COACHMEN INDUSTRIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-0892 |
| | § | |
| WILLIS OF ILLINOIS, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this action are motions for summary judgment filed

by Defendant Willis of Illinois, Inc. ("Willis") and Plaintiff Coachmen Industries, Inc.

("Coachmen") [Docs. # 79 and # 85, respectively].  When briefing on these motions

was nearly complete, choice of law questions arose.  The Court subsequently ordered

supplemental briefing on this issue and received submissions from each party [Docs.

# 144 and # 149].  Having reviewed the parties' submissions, all pertinent matters of

record, and applicable law, the Court concludes that Texas law is inapplicable to

Coachmen's breach of contract and Texas Insurance Code claims.

## I.    BACKGROUND

The factual context of this dispute is set forth in prior opinions of the Court.

The facts from those rulings are incorporated by reference to the extent necessary.

Briefly, Coachmen is a manufacturer of travel trailers.  Wayne and Norma Brashears,

residents of Corpus Christi, Texas, were injured when their Coachmen-manufactured trailer caught fire in Jim Wells County, Texas, in 2001. The Brashears sued Coachmen in a Texas state court for damages related to the fire and subsequently settled with the company for several million dollars. The claims in this case arise from alleged wrongdoing by Coachmen's insurance broker, Willis, concerning the brokering of insurance relevant to, and Willis's handling of, the Brashears Claim.

Coachmen, an Indiana corporation, initially filed suit in this matter against former Defendant Alternative Service Concepts, LLP ("ASC"), a Delaware corporation with its principal place of business in Tennessee,[1] for alleged wrongs concerning the handling of an insurance claim covered by Coachmen's umbrella carrier, Gulf Insurance Company ("Gulf"), a Connecticut corporation, arising from the Brashear case. Gulf declined Coachmen's claim for indemnity, arguing that Coachmen had not given Gulf timely notice. In bringing suit, Coachmen relied for jurisdiction on the on the parties' complete diversity of citizenship. 28 U.S.C. § 1332. Willis, an Illinois corporation, was subsequently brought into the suit. In spite of the fact that this case has always been before the Court on diversity jurisdiction, it was not until ASC filed a reply to its motion for summary judgment that choice of law issues were first raised, specifically with respect to Coachmen's Texas Insurance Code

---

[1] Coachmen and ASC subsequently reached an out-of-court settlement.

claims.[2]  Willis subsequently joined ASC's position that there is a choice of law issue, assserting that it never cited out-of-state law in any of its summary judgment briefing because the relevant law of Indiana—according to Willis, the proper law to be applied in this case—is largely the same as that of Texas.[3]  *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and [the Court is to] simply apply the law of the forum state." (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2000))).

Willis, however, now has refined its position, asserting that Indiana law varies from Texas law in "two critical respects"[4]:  First, "in the absence of a statutory provision or an agreement providing for fees," Indiana law, unlike that of Texas, does not provide for recovery of attorneys' fees in breach of contract actions.  *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004) (citing *Willie's Constr. Co. v. Baker*, 596 N.E.2d 958 (Ind. App. 1992)).  Second, Willis claims that application of Indiana

---

[2]     *See* ASC's Reply to Plaintiff's Response to ASC's Motion for Summary Judgment [Doc. # 114], at 13–17.

[3]     *See* Willis's Response to Coachmen's Motion to Partially Strike ASC's Reply Brief [Doc. # 120], at 2.

[4]     *Id.* at 2–3.

law "forecloses Plaintiff's claims under the Texas Insurance Code."[5]  Accordingly,

Willis assets that a choice of law analysis is necessary and argues that if "application

of Indiana law [is required] in this case, Plaintiff cannot recover attorneys' fees or

assert insurance code claims."[6]

Coachmen maintains that Texas law is applicable to this case, but also suggests

that if another state's law should apply, it should be the law of Willis's home state,

Illinois.

## II.   ANALYSIS

### A.   Choice of Law

A federal district court sitting in diversity applies the choice of law rules of the

state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);

*Denman v. Snapper Div.*, 131 F.3d 546, 548 (5th Cir. 1998).  For contract cases, Texas

uses the "most significant relationship" test described in Section 6 of the Restatement

(Second) of Conflict of Laws ("Restatement"),[7] in light of certain "contacts" listed in

---

[5]     *Id.* at 3.

[6]     *Id.*

[7]     This test does not apply to contract cases in which the parties have a valid choice of law clause in their contract.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).  Willis's brokerage agreement with Coachmen does not contain such a clause.  Accordingly, the Restatement analysis is appropriate.

Sections 188 and/or 196 of the Restatement.[8]  *Citizens Ins. Co. of Am. v. Daccach*,

217 S.W.3d 430, 442–43 (Tex. 2007) (citing *Hughes Wood Prods. Inc. v. Wagner*, 18

S.W.3d 202, 203–04 (Tex. 2000)); *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953

S.W.2d 733, 735–36 (Tex. 1997); *see also Mayo v. Hartford Life Ins. Co.*, 220 F.

Supp. 2d 714, 729–30 (S.D. Tex. 2002); *Duncan*, 665 S.W.2d at 420–21.  Section 188

applies to contracts generally; Section 196 applies to contracts for services.  *See Pruitt*

*v. Levi Strauss & Co.*, 932 F.2d 458, 461 (5th Cir. 1991) (citing *DeSantis v.*

*Wackenhut Corp.*, 793 S.W.2d 670, 678–79 (Tex. 1990)).  The parties dispute which

section should be applied to the facts of this case.  Comment (a) to Section 196 of the

Restatement states that "[t]he rule [of this Section] applies to contracts with . . .

persons exercising a public profession, as lawyers, doctors, *brokers*, commission

agents, and factors."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196 cmt. a

(1971) (emphasis added) [hereinafter RESTATEMENT].  Hence, notwithstanding cases

in which Section 188 was applied to determine choice of law in insurance disputes

involving an insurer and a broker, *see, e.g.*, *Scottsdale Ins. Co. v. Nat'l Emergency*

*Servs.*, 175 S.W.3d 284, 292 (Tex. App—Houston [1st Dist] 2004, pet. denied),

---

[8]    Section 145 of the Restatement details the choice of law analysis specific to tort
claims.  Although this section is relevant to the choice of law analysis on Coachmen's
Texas Insurance Code claims, *see supra* Section II.A.2, neither party has identified
any conflicts between Indiana and Texas tort law relevant to the negligence claim
asserted by Coachmen.  *See supra* Section II.A.3.

Section 196 is the provision applicable to the facts presented here, where the only defendant is the insured's broker. In any event, as the analysis under either section is largely identical and merely refines the "most significant relationship" test of Section 6, the Court will consider both sections in reaching its conclusion.

The first step in the choice of law analysis detailed in Section 6 of the Restatement regards "whether the particular substantive law is subject to a clear choice of law determination by the Legislature of the forum state." *Citizens Ins. Co.*, 217 S.W.3d at 443 (citing *Marmon v. Mustang Aviation*, 430 S.W.2d 182 (Tex. 1968); RESTATEMENT § 6(1) (1971)); *see also Maxus Exploration v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). The only statutory provision potentially applicable to this dispute states:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or a the home office of the company or corporation issuing the same.

TEX. INS. CODE art. 21.42. Importantly, this provision has been "interpreted narrowly to avoid giving 'extraterritorial effect' to its terms." *Scottsdale Ins. Co.*, 175 S.W.3d at 292 (citing *Howell v. Am. Live Stock Inc. Co.*, 483 F.2d 1354, 1359 (5th Cir. 1973); *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968)); *Am.*

*Home Assurance Co. v. Safway Steel Prods. Co.*, 743 S.W.2d 693, 697 (Tex. App.—Austin 1987, writ denied) ("[T]he statute may not be used in a way which regulates business outside the State of Texas.").

To the extent this statute even applies to a dispute between and insured and its insurance broker, *see, e.g.*, *Scottsdale Ins. Co.*, 175 S.W.3d at 292–93, it does not dictate the outcome here.  The insured, Coachmen, is an Indiana corporation and cannot be considered a "citizen or inhabitant" of Texas.  *See Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see also TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 417 (E.D. Tex. 1998)  (In Texas, "a corporation is [considered] an *inhabitant* of the state under whose law it is incorporated and . . . it has a *residence* wherever it conducts its ordinary business.  Therefore, Texas law defines an 'inhabitant' much as a 'citizen.'" (quoting *Pittsburg Water Heater Co. of Tex. v. Sullivan*, 282 S.W. 576, 579 (Tex. 1926))).  Further, there are no facts to demonstrate, or even suggest, that Coachmen or Willis were doing business in Texas when Willis placed Coachmen's insurance or that the policies were brokered in the course of Coachmen's or Willis's business in Texas.  "[A]rticle 21.42 [is] designed only to assure that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas, *when and only when* those contracts are made in the course of the company's

Texas business." *Howell*, 483 F.2d at 1359; *see also SnyderGeneral Corp. v. Great*

*Am. Ins. Co.*, 928 F. Supp. 674, 678 n.2 (N.D. Tex. 1996).

Therefore, as there is no applicable statutory directive, the factors relevant to

the choice of the applicable rule of law under the Restatement include:

(a)    the needs of the interstate and international system;
(b)    the relevant policies of the forum;
(c)    the relevant polices of other interested states and the relative
       interests of those states in the determination of the particular issue;
(d)    the protection of justified interests;
(e)    the basic policies underlying the particular field of law;
(f)    certainty, predictability and uniformity of result; and
(g)    ease in the determination and application of the law to be applied.

*See Citizens Ins. Co.*, 217 S.W.3d at 442–43 (quoting RESTATEMENT § 6(2) (1971));

*Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 893, 897 n.1 (Tex. App.—Houston [14th

Dist.] 2000, no writ).  Specifically, under Section 188(2), the contacts to be considered

in determining which state has the most significant relationship to the occurrence and

parties in a contract case include:

(a)    the place of contracting,
(b)    the place of negotiation of the contract,
(c)    the place of performance,
(d)    the location of the subject matter of the contract, and
(e)    the domicile, residence, nationality, place of incorporation and
       place of business of the parties.

RESTATEMENT § 188(2) (1971); *Minn. Mining*, 953 S.W.2d at 735–36; *see also*

*Houston Cas. Co. v. Certain Underwriters at Lloyd's London*, 51 F. Supp. 2d 789, 797

(S.D. Tex. 1999).  Section 196 details the analysis to be applied to a contract for the rendition of services:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which . . . event the local law of the other state will be applied.

RESTATEMENT § 196 (1971); *see also DeSantis*, 793 S.W.2d at 678–79.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."  RESTATEMENT § 188(2); *see also* RESTATEMENT § 196 cmt. b.  The proper analysis must "consider which state's law has the most significant relationship to the particular substantive issue to be resolved."  *Hughes Wood Prods.*, 18 S.W.3d at 205.  In general, it is not the number of contacts with a particular state that is determinative.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).  "Some contacts are more important than others because they implicate state policies underlying the particular substantive issue."  *Id*.  "Consequently, selection of the applicable law depends on the qualitative nature of the particular contacts."  *Id*; *see also Hull & Co. v. Chandler*, 889 S.W.2d 513, 518 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  Importantly, "Texas law requires an issue-by-issue choice of law analysis."  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*,

343 F.3d 719, 727 (5th Cir. 2003). Therefore, a choice of law decision as to a contract claim will not necessarily apply to a statutory or other common law claim alleged in the same case. *Id.* (citing *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); *Busse v. Pac. Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex. App.—Texarkana 1995, writ denied)).

### 1. Breach of Contract Claim

### a. Application of Texas Law?

First, a detailed analysis of choice of law rules and the Restatement factors demonstrates that the law of Texas does not govern Coachmen's breach of contract claim. Coachmen relies heavily on the fact of the Brashears lawsuit to establish a "significant relationship" between Texas and the facts of this case in order to justify application of Texas law. Coachmen asserts that "[w]hile Illinois was the primary location for the rendition of generalized brokerage services, Texas is the location for the 'service' sought to be upheld in the Brashears . . . case[]."[9] However, Coachmen's position is undermined by the rest of its argument. Coachmen states that the alleged services Willis was obligated—but failed—to perform include:

> (1)  A duty to properly represent the coverage under the Gulf policy;
> (2)  A duty to counsel Coachmen about the existence and effect of Endorsement # 16 [of the Gulf policy];
> (3)  A duty to inform Coachmen upon receipt of the Brashear's [sic]

---

[9]      Coachmen's Brief Opposing Application of Indiana Law [Doc. # 149], at 7.

Lawsuit in March 2004 that notice should be given to Gulf;

(4)     A duty to provide ASC with proper carrier information upon the specific request for assistance on April 22, 2005;

(5)     A duty to supervise ASC in its reporting of the Brashear's [sic] claim and notice to Gulf;

(6)     A duty to place Gulf on notice itself and/or advise Coachmen and ASC that notice was needed; [and]

(7)     A duty to accurately represent to Coachmen, Willis' contractual and business promises as outlined in Willis' yearly Brokerage Service Proposals and advertising materials.[10]

Although Willis's alleged wrongs arose in connection with the handling of the Brashears Claim, these duties flowed not from the fact of the Brashears lawsuit, but from alleged contracts between Coachmen and Willis, none of which were negotiated, delivered, or performed in Texas, or entered into by residents of Texas.

In the context of an insurance coverage case, the Fifth Circuit considers the state with the most significant relationship to the dispute to be the state with contacts to the *insurance* dispute as opposed to the *underlying* suit. *See Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 232–33 (5th Cir. 2005); *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996); *W.R. Grace Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 873 (5th Cir. 1990); *Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1292 (5th Cir. 1986). This is so because once an injured party has been paid, neither he, nor his state of residence, has any identifiable interest in a dispute between the payor insured and its insurance company. The state's "only interest [is] in its

---

[10]     *Id.* at 6.

resident tort victims' compensation [which is] satisfied through [a] settlement." *Ingalls Shipbuilding*, 410 F.3d at 232 (citing *W.R. Grace Co.*, 896 F.2d at 873–74)).

Choice of law analyses in coverage disputes provide some guidance here.  In this case, so long as the Brashears—the injured parties— are properly compensated, neither they, nor their state of residence—Texas—have any interest in whether the settlement is ultimately paid by Coachmen, Coachmen's insurer, or Coachmen's insurance broker and claims handler.  *See W.R. Grace*, 896 F.2d at 874.  Thus, the fact that the Brashears lawsuit was litigated in Texas and involved Texas residents does not, in and of itself, justify application of Texas law to this dispute.[11]

Turning to the specific Restatement factors, none weigh in favor of application of Texas law.  There is no evidence that the alleged contracts between Coachmen and Willis were placed, or even negotiated, in Texas, or that either party is a resident of Texas.  *See* RESTATEMENT § 188(2) (1971), in addition, none of the services Willis was allegedly required to provide were to have been provided in Texas.  *See id.*;

---

[11]     Coachmen attempts to characterize this lawsuit as one seeking "indemnification for its expenses in settling the underlying Brashears[] lawsuit" and cites case law holding that contractual indemnity clauses should generally, for various public policy reasons, be analyzed under the law of the state in which the indemnity obligation arises.  *See* Coachmen's Brief Opposing Application of Indiana Law [Doc. # 149], at 7–8 (discussing *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 180 (Tex. App.—Houston [14th Dist.] 2002, no pet.). This argument falls of its own weight; this case does not involve interpretation of an indemnity clause contained in a contract between Coachmen and Willis.  Rather, Coachmen seeks to recover for alleged breaches of contractual duties.

RESTATEMENT § 196 (1971).   Indeed, several of these services—including Willis's alleged "duty to properly represent . . . coverage under the Gulf policy"—would have been breached years before the Brashears Claim even arose.   There is no evidence that Coachmen and Willis intended their brokerage agreement to be performed in Texas and no evidence that, even if Willis fulfilled its alleged duties to Coachmen, it would have done so in Texas.   Simply put, the alleged contract between Coachmen and Willis bears no relationship to Texas and Texas law does not apply to the dispute presented.

### b.      Application of Indiana or Illinois Law?

Concluding that Texas law is inapplicable to the breach of contract claim presented here, however, does not end the inquiry.   The Court must still determine whether the law of Indiana—Coachmen's state of incorporation—or the law of Illinois—Willis's state of incorporation—should govern the outcome of this dispute.   Turning again to the Restatement factors, the Court concludes that Illinois law is most appropriately applied to Coachmen's contract claim.

Under Section 188 of the Restatement, governing contracts in general, the Court is directed to consider the place(s) of contracting, negotiating, and performance; the location of the subject matter of the contract; and the location of the parties.   *See* RESTATEMENT § 188(2) (1971).   The subject matter of the contract—Coachmen's

insurance needs—spans multiple states and does not implicate any one state in particular.[12]  The location of the parties also does not aid in this analysis under the facts of this case.  Thus, only the factors focusing on the place(s) of contracting, negotiating, and performance are relevant here.

Willis argues that "the places of contracting and negotiating favor Indiana, as that is the state where the brokerage proposals were negotiated and delivered to [Coachmen]."[13]   However, this unsubstantiated assertion is not probative.  There is no evidence regarding where Coachmen and Willis negotiated the brokerage agreements, or where they were executed.  While "[a]n insurance contract is made in the state where it is delivered," *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d. Cir. 2007) "[t]here is persuasive authority to apply the law of the state where the insurance agent[/broker] is located when the agent[/broker] has acted to the detriment either of the insured or the insurer."  *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Energy Ins. Agency, Inc.*, 659 F. Supp. 97, 100 (S.D. Tex. 1987) (citing *Edinburgh Assurance*

---

[12]   Willis placed insurance for Coachmen with various insurers located throughout the country.  *See* Willis's Motion for Summary Judgment [Doc. # 79], Exh. B1: "Coachmen Brokerage Proposal (2001)."  This case specifically concerns alleged wrongdoing in relation to Coachmen's policy with Gulf, a Connecticut corporation.  However, neither party has advocated application of Connecticut law to this dispute, and this singular connection to Connecticut is not substantial enough to justify such application.  Accordingly, as between Indiana and Illinois, this Restatement factor is neutral.

[13]   Willis's Brief in Support of Applying Indiana Law [Doc. # 144], at 8.

*Co. v. R.L. Burns Corp.*, 479 F. Supp. 138, 151 (C.D. Cal. 1979), *rev'd on other grounds*, 669 F.2d 1259 (9th Cir. 1982))); *Polar Int'l Brokerage Corp. v. Investors Ins. Co. of Am.*, 967 F. Supp. 135, 141 (D.N.J. 1997) ("'If a company from another state uses an insurance broker to negotiate and purchase its insurance policies, then the place of contracting is the place where the broker negotiated the policies.'" (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 320 n.4 (3d Cir. 1995))); *see also Hammersmith*, 480 F.3d at 234 (noting that the fact that the insured's broker was located in New York militated in favor of application of New York law to an insurance dispute); *W.R. Grace*, 896 F.2d at 873 (same). Thus, in the absence of any evidence to the contrary, the factors concerning the places of negotiation and execution favor application of Illinois law.

However, more important than the place of contracting and negotiation is the place of performance, which is also the key factor under Section 196 of the Restatement. *See Mayo*, 220 F. Supp. 2d at 744–45 ("[S]tanding alone, the place of contracting is a relatively insignificant contact." (quoting RESTATEMENT § 188 cmt. e (1971)); *see also DeShazo v. Baker Hughes Oilfield Ops., Inc.*, 84 F. App'x 407, 412 (5th Cir. 2003) ("[T]he place where a major portion of the services were to be rendered, and the place of performance is generally conclusive of this issue." (citing *Pruitt*, 932 F.2d at 461)); *N.Y. Life Ins. Co. v. Baum*, 617 F.2d 1201, 1204 (5th Cir.

1980) ("Under Texas law, in the absence of a contrary manifestation, . . . where the

contract is made in one jurisdiction but to be performed in another[,] the presumption

arises that the parties contracted with reference to the place of performance." (citing

*Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V.*, 486 F.2d 493 (5th Cir.

1973); *Castilleja v. Camero*, 414 S.W.2d 424 (Tex. 1967); *Frey v. Estate of Sargent*,

533 S.W.2d 142 (Tex. Civ. App. 1976); *Fidelity Mut. Life Ass'n v. Harris*, 57 S.W.

635 (1900))); *DeSantis*, 793 S.W.2d at 679.

The evidence is sparse, but it does appear from the record that, even if Willis

presented its brokerage proposals to Coachmen in Indiana (which can only be

surmised from the record),[14] Willis negotiated, placed, and received the insurance

policies brokered for Coachmen in Illinois.[15]   Moreover, Coachmen alleges broadly

that Willis failed to properly notify Coachmen of important terms in an insurance

---

[14]     *See* Willis's Motion for Summary Judgment [Doc. # 79], Exh. B: "Affidavit of Dan
Hawver, Executive V.P. of Willis of Illinois, Inc.," ¶ 3.

[15]     *See* Willis's Motion for Summary Judgment [Doc. # 79], Exh. B: "Affidavit of Dan
Hawver, Executive V.P. of Willis of Illinois, Inc.," ¶¶ 3, 5 (describing the brokering
process), Exh. B1: "Coachmen Brokerage Proposal (2001)" (containing a cover letter
from Willis's Chicago office stating: "Enclosed please find the Final Proposal from
the 5/1/01 to 5/1/02 program . . ."); Exh. B4: "Coachmen Brokerage Proposal (2004)"
(same); Coachmen's Cross-Motion for Summary Judgment [Doc. # 121], Exh. J:
"Letter from Willis to Coachmen" ("We have received and reviewed the enclosed
policy.  The policy sets out the benefits and coverage fo the insurance we have placed
for you . . . ."); Exh. I: "Letter from Willis Coachmen" (forwarding an insurance
policy); Exh. K: "Letter from Willis to Coachmen" (same); Exh. AL: "Letter from
Willis to Coachmen" (same).

policy brokered by Willis and failed to properly place that insurer on notice of a pending claim.  To the extent these duties were required under Willis's brokerage agreement with Coachmen, they surely would be expected to be performed from Willis's place of business— Illinois.  *See Hammersmith*, 480 F.3d at 234 ("[T]he . . . factor favors New York because the entities responsible for providing notice under the insurance contract were located in New York.").  Thus, this factor also favors application of Illinois law to Coachmen's breach of contract claim.

Even when the Restatement factors of Sections 188 and 196 militate in favor of application of one state's law, there are exceptions if another state has a more significant relationship to the parties and the dispute.  *See* RESTATEMENT § 196 cmt. d (1971).  In such cases, the factors set out in Section 6 of the Restatement should be more fully analyzed.  *See DeShazo*, 84 F. App'x at 412.  In this case, a full Section 6 analysis is not necessary.  The only states with a possible relationship to this dispute and thus an interest in the resolution of this case are Texas, Indiana, and Illinois.  As noted above, Texas law is clearly inapplicable to Coachmen's contract claim.  As between Indiana and Illinois, while the question is closer, the Court concludes that Illinois has the more significant relationship to the present dispute.  Indiana has some relationship because that state presumably has an interest in ensuring that contracts entered into by its residents are fully performed.  However, that interest does not

outweigh all the other Restatement factors in favor of application of Illinois law, including Illinois's interest in ensuring that insurance brokers doing business within its borders and subject to Illinois insurance regulations fulfill their contractual and legal duties to their clients.  *See, e.g.*, *Pittston Co. v. Sedgwick James, Inc.*, 971 F. Supp. 915, 924 (D.N.J. 1997).  Accordingly, the Court holds that Illinois law governs Coachmen's breach of contract claim.

### 2.   Texas Insurance Code Claims

The Court next turns to whether Coachmen can support causes of action against Willis for violations of the Texas Insurance Code.  Coachmen's Insurance Code claims arise from alleged misrepresentations made by Willis regarding its services and conduct  in relation to the Brashears Claim, potentially cognizable under Sections 541.051 and 541.052 (formerly article 21.21) of the Texas Insurance Code.  *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 699 nn. 65, 67 (Tex. App.—Houston [14th Dist.] 2006, pet. denied ) (noting that article 21.21 of the Texas Insurance Code was repealed and recodified and that the old article 21.21 encompasses Sections 541.051 and 541.052 of the current code).

"In dealing with claims of violations of article 21.21 of the Insurance Code . . . , [Texas] courts [deciding choice of law questions] have applied the factors found in the general tort provision of the Restatement (Section 145)."  *Scottsdale Ins. Co.*, 175

S.W.3d at 294 (citing *TV-3*, 28 F. Supp. 2d at 417; *Nat'l W. Life Ins. Co. v. Rowe*, 86

S.W.3d 285, 300 (Tex. App.—Austin 2002), *rev'd on other grounds*, 164 S.W.3d 389

(2005)); *see also Hull & Co.*, 889 S.W.2d at 518 (citing *Albany Ins. Co. v. Anh Thi*

*Kieu*, 927 F.2d 882, 890–91 (5th Cir. 1991); *Duncan*, 665 S.W.2d at 420–21)).  The

"[c]ontacts to be taken into account in applying the principles of § 6 to determine the

law applicable to an issue [in tort] include":

    (a)    the place where the injury occurred;
    (b)    the place where the conduct causing the injury occurred;
    (c)    the domicile, residence, nationality, place of incorporation and
            place of business of the parties; and
    (d)    the place where the relationship, if any, between the parties is
            centered.

RESTATEMENT § 145(2) (1971).  The only statutory claims before the Court are Texas

Insurance Code claims.  Without deciding which state's insurance law should apply

to the facts here, the Court concludes that Texas law unequivocally does not.

Coachmen insists that its injury, and the conduct causing it, occurred in Texas

by virtue of the Brashears lawsuit, and accordingly, that Texas law is applicable and

supports liability under the Texas Insurance Code.  However, Coachmen does not

allege, either in its complaint or in its motion for summary judgment, that it was

injured by the mere existence of the Brashears lawsuit.  Rather, it alleges that "Willis

misrepresented the extent of the terms and endorsements to the Gulf policy," and that

Willis misrepresented its obligations under its brokerage agreement with Coachmen.[16] While the Brashears lawsuit may have brought these alleged misrepresentations to light, it is clear that, if they were made, they were made when Willis served as a broker to obtain insurance policies on Coachmen's behalf and presented its brokerage proposals to Coachmen.   Coachmen is not a resident of Texas.   The alleged misrepresentations did not reference the Brashears Claim, and would have been made long before the Brashears Claim arose.   Thus, Coachmen's alleged injury could not have occurred in Texas, nor been caused by conduct there.

As to the third factor, neither Coachmen nor Willis is incorporated in Texas. While each company does business in Texas, there is no evidence that their business interests in relation to this suit were in any way joined by virtue of their Texas subsidiaries.

Similarly, the place where the relationship between the parties is centered—the fourth factor in the Restatement analysis—is clearly not Texas. The Brashears lawsuit is the only identified connection the parties have to each other and to this state.  As noted above, that connection alone is insufficient to require application of the Texas Insurance Code to the dispute at bar, in which "[n]o Texas defendant, injured party, or property is involved." *Hull & Co.*, 889 S.W.2d at 518.  Hence, there are no factors

---

[16]     *See* Coachmen's Cross-Motion for Summary Judgment [Doc. # 121], at 25–29

weighing in favor of application of the Texas Insurance Code.  *See id.* ("TEX. INS. CODE ANN. art 21.42 does not mandate application of Texas law where [an] insurance contract [is] not payable to [a] Texas resident or inhabitant." (citing *W.R. Grace & Co.*, 896 F.2d at 883)).

In addition, the more general "most significant relationship" test of Texas law and the Restatement fails to establish that Texas has a larger interest in this suit than would either Indiana or Illinois.  Coachmen argues that because Willis has offices in Texas and is licensed to do business here, and because Coachmen sells its products to Texas residents, "Texas has a strong interest in ensuring that this Texas licensed broker will be brought to bear for its failure" to "abide by its contractual obligations" with regard to the Brashears lawsuit.[17]   The Court is unconvinced on the facts presented.  Although Willis has offices in Texas for corporate affiliates, its Texas subsidiaries have absolutely no connection to this dispute and the brokerage agreements at issue have virtually no relationship to Texas.  *See Hull & Co.*, 889 S.W.2d at 518 ("The fact that [the insurance company's] agent had a subsidiary that did business in Texas or that [the insured's] agent was located in Texas is inconsequential. . . . [I]t is not the number of contacts with a particular state that is determinative, but the qualitative nature of the particular contacts insofar as they

---

[17]     Coachmen's Brief Opposing Application of Indiana Law [Doc. # 149], at 9–10.

implicate important state policies underlying the particular substantive issue.").  The agreement was entered into between Coachmen and a broker incorporated and doing business in Illinois.  Willis did not broker insurance for Coachmen from or through one of its Texas offices.  Nor has Coachmen pointed to any evidence that it asked Willis to broker insurance specifically with regard to any features of Texas law.  Thus, Texas insurance law is not relevant to this lawsuit.

Coachmen also argues that "Willis . . . had a contractual, common law, and statutory obligation to be apprised of and counsel Coachmen about insurance matters/ actions/suits that could be brought anywhere in the United States."  This contention is unsupported by any cited authority and is unavailing.  Willis's responsibility as Coachmen's broker to place insurance that met Coachmen's national insurance needs cannot mean that Willis, as an insurance broker operating from Illinois was responsible for deciphering and complying with all conceivable interpretations of the insurance codes of each of the fifty states.

Thus, the Court concludes that Texas law is inapplicable in regard to Coachmen's putative statutory claims against Willis.  Accordingly, Coachmen's Texas Insurance Code claims are dismissed.

### 3.    Negligence Claim

Because neither party raised choice of law issues with regard to Coachmen's

negligence claim, despite the clear opportunity to do so in response to the Court's request for supplemental briefing on choice of law, the issue of the application of law other than that of Texas has been waived.  Willis's pending motion for summary judgment on Coachmen's negligence claim will be decided on the basis of Texas law— the only law cited in the parties' briefs.

## B   Amendment to Pleadings

Coachmen, in its "Brief Opposing Application of Indiana Law" [Doc. # 149] requests that it be given leave to amend its pleadings should the Court decide that Illinois law applies to Coachmen's insurance code claims.[18]  This request is denied. Coachmen previously sought—several months after the close of discovery and while several motions for summary judgment, including those at issue here, were pending—leave to amend to assert statutory claims under Illinois and Tennessee law.[19] The Court denied that motion because Coachmen had failed to demonstrate entitlement to relief under Federal Rule of Civil Procedure 16.[20]  Specifically, the Court found that Coachmen had long been on notice of choice of law issues and could

---

[18]    *See* Coachmen's Brief Opposing Application of Indiana Law [Doc. # 149], at 4 n.3., 13.

[19]    *See* Motion for Leave to File a Third Amended Complaint [Doc. # 115], ¶¶ 4, 10.

[20]    *See* Memorandum and Order of Jan. 17, 2008 ("January 2008 Order") [Doc. # 126].

have brought the alternative statutory claims in its previous pleadings.[21]   The Court also found that permitting Coachmen to amend its pleadings at that late stage of this litigation would create prejudice and unnecessary burdens on Defendants, and would, at a minimum, require reopening of discovery and additional—or even new—summary judgment briefing.[22]   These concerns persist.  Coachmen argues that the Court's decision to deny leave to amend was "presumably because of the approaching March trial setting," but now that the "trial has been pushed back twice," leave to amend is now appropriate.[23]   The Court disagrees.  The reasons for denial of Coachmen's prior request for leave to amend apply with equal force.  The Court's decision was not influenced by the trial setting in this case, which in actuality, was a February setting for docket call.[24]   The denial was based on a multi-factor analysis under the applicable law and rules of civil procedure.   Docket call has been rescheduled several times throughout the course of this litigation.  However, these continuances have been at the joint request of the parties,[25] to accommodate requested

---

[21]     *Id.*, at 4–7.

[22]     *Id.*, at 7–8.

[23]     Coachmen's Brief Opposing Application of Indiana Law [Doc. # 149], at 5.

[24]     *See* Order of July 16, 2007 [Doc. # 51]; Order of Jan. 24, 2008 [Doc. # 130].  At that time, there had been no trial dates chosen.

[25]     *See* Joint Motions to Modify Scheduling Order [Docs. # 50, # 70].

extensions of time for briefing on motions,[26] and to permit the parties time to engage in settlement negotiations.[27]   More recently, a trial date was set but it has been changed twice, both times at Coachmen's request.[28]  For the same reasons given in the Court's January 2008 Order denying Coachmen's earlier motion for leave to amend its pleadings, and because the Court will not reopen discovery at this very late stage of this case, Coachmen's request to amend its pleadings in response to the Court's holdings herein is denied.

## III.   <u>CONCLUSION</u>

Based on the foregoing, the Court concludes that Coachmen's Texas Insurance Code claims are not cognizable in this suit.  The choice of law analysis dictates that the law of Illinois is properly applied to Coachmen's breach of contract claim. Neither Coachmen nor Willis has meaningfully identified any conflicts between Texas law and Illinois law relevant to this claim.  Therefore, it is hereby

**ORDERED** that Coachmen's statutory claims under the Texas Insurance Code are **DISMISSED**.  It is further

**ORDERED** that each party must file by **2:00 p.m.** on **May 5, 2008**, a

---

[26]   *See* Orders Granting Motions for Extension of Time to File [Docs. # 91, # 96, # 100, # 111, # 148].

[27]   *See* Hearing Minutes and Order [Doc. # 134].

[28]   *See* Motion for Continuance [Doc. # 139]; Letter to the Court [Doc. # 151].

supplemental memorandum identifying conflicts, if any, between Illinois and Texas law relevant to Coachmen's breach of contract claim. Each party is to state whether any identified conflicts necessitate new or additional summary judgment briefing (other than the supplemental memorandum). The memorandum is limited to eight (8) pages (13-point font, double-spaced, with one-inch margins). Should the Court determine that additional briefing on the parties' summary judgment motions is necessary, it promptly will issue an order establishing short deadlines for those submissions.

SIGNED at Houston, Texas, this <u>28th</u> day of **April, 2008**.

Nancy F. Atlas
United States District Judge